IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| LOWELL R. COUNTS, II | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:07-CV-261 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. For the reasons provided herein, defendant's motion for summary judgment [doc. 13] will be granted, and this appeal will be dismissed.

I.

*Procedural History*

Plaintiff was born in 1972. He applied for benefits in July 2004, claiming to be disabled by "back and leg injury from auto accident." [Tr. 53, 65, 552]. Plaintiff alleged a disability onset date of August 1, 2003. [Tr. 57, 556]. The applications were denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in February 2006.

In April 2006, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from "musculoskeletal problems and an affective mood disorder," which are "severe" but not equal, individually or in concert, to any impairment listed by the Commissioner. [Tr. 18-19]. The ALJ ruled that plaintiff retains the residual functional capacity ("RFC") for a restricted range of light work. [Tr. 19-23]. Relying on vocational expert testimony, the ALJ determined that plaintiff remains capable of performing jobs existing in significant numbers in the regional and national economies. [Tr. 23]. Plaintiff was accordingly deemed ineligible for benefits.

Plaintiff then sought, and was denied, review from the Commissioner's Appeals Council, despite the submission and consideration of additional medical records. [Tr. 6, 9, 565-602]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Through his timely complaint, plaintiff has properly brought his case before this court for review. *See* 42 U.S.C. § 405(g).

On appeal, plaintiff (who is represented by legal counsel) has chosen not to file a motion for judgment, instead merely submitting a notice [doc. 7] of "his intention to rely on the record without filing a motion and brief." Under normal circumstances, plaintiff's decision would have constituted a waiver of all issues on appeal. *See, e.g., Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("we decline to formulate arguments on [plaintiff's] behalf, or to undertake an open-ended review of the entirety of the administrative record . . . . Rather, we limit our consideration to the particular points that [plaintiff] appears

to raise in her brief on appeal."); *see also Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 807 (6th Cir. 2008) ("it squarely is *not* the duty of the district court . . . to re-weigh the evidence . . . .") (emphasis in original).

However, the standard briefing letter formerly used in this district allowed plaintiff to file such a notice. By letter to all counsel dated January 4, 2008 [doc. 6], the clerk of court advised in material part, "If the parties intend to rely on the record without filing a motion, they must file a notice to the court in writing." The court thus in effect "opened the door" for counsel not to file any argumentation on plaintiff's behalf, and the undersigned has accordingly conducted a careful review of the administrative record to ensure that the ALJ's decision was supported by substantial evidence.

The court's January 2008 letter does not, however, allow plaintiff's late-submitted evidence to be considered on appeal. "[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted). This court can instead only remand a case for further administrative proceedings in the rare instance that a claimant meets the burden of showing that his Appeals Council evidence meets each prong of the "new, material, and good cause" standard of sentence six, 42 U.S.C. § 405(g). *Id.*

Permitting plaintiff to rely on the record below does not excuse his sentence six burden on appeal. The "new, material, and good cause" standard does not become an issue until a claimant's application reaches the district court level. The issue was thus not a part of the record below. If the present plaintiff wished for his Appeals Council evidence to be considered by this court, it was his burden to articulate to this court how the evidence warrants sentence six remand, as there is nothing pertinent for him to rely upon in the administrative record. He has made no effort in that regard. The issue is accordingly waived, and plaintiff's late-submitted evidence [Tr. 565-602] has *not* been considered by this court. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

II.

*Background*

Plaintiff has a high school diploma and some community college credits. [Tr. 607]. His past relevant employment is as a computer-aided drafter and as an automobile reconditioner. [Tr. 77].

Plaintiff was involved in a three-car accident in June 2003. [Tr. 121]. He now claims "constant severe lower back pain and severe leg pain. I have numbness in my feet and leg. I'm weak and shakey [sic]. I can't sit for long and can't stand for long." [Tr. 65]. He is purportedly "confined to bedrest" for most of each day. [Tr. 103].

Plaintiff cares for his young son. [Tr. 72, 615]. Plaintiff can drive [Tr. 72, 468], make simple meals [Tr. 103, 105], build model cars [Tr. 107, 470], wash dishes [Tr.

4

470], and shop at malls and large discount stores. [Tr. 106, 470, 615].

III.

*Relevant Medical Evidence*

A. Physical

On June 20, 2003, plaintiff reported stiffness, headaches, and radiating low back pain to general practitioner Wesley Eastridge. [Tr. 497, 519-20]. Plaintiff complained of worsening pain at two appointments the following month. [Tr. 495-96].

On referral from Dr. Eastridge, plaintiff first visited neurosurgeon Ken Smith in July 2003. In October 2003, Dr. Smith performed a left L5-S1 hemilaminotomy and diskectomy. [Tr. 254]. From August 23, 2003, through March 16, 2004, Dr. Smith opined that plaintiff "cannot return to work at this time." [Tr. 244, 247, 249, 253, 256, 260, 264, 270].

On April 1, 2004, Dr. Smith wrote, "The patient may continue his employment and activities as a car reconditioner. His restrictions include: avoidance of excessive bending and stooping, periodically alternating between sitting and standing and walking." [Tr. 240]. That day, plaintiff rated his pain as seven on a scale of one to ten. [Tr. 239]. Dr. Smith repeated his vocational opinion on May 27, 2004, with plaintiff again reporting "seven out of ten" pain. [Tr. 235-36].[1]

---

[1] Plaintiff in fact returned to work at the family automobile reconditioning business on December 8, 2003, on at least a part-time basis. [Tr. 248, 611-12]. By February 2004, he had returned to "regular job duties without restrictions" resulting in an increase in pain symptoms. [Tr. (continued...)

5

Nonexamining physician Andrew Miller completed a Physical RFC Assessment on September 27, 2004. Dr. Miller opined that plaintiff can occasionally lift up to twenty pounds, frequently lift up to ten pounds, stand/walk for approximately six hours per workday, and sit approximately six hours per workday. [Tr. 316].

Plaintiff returned to Dr. Eastridge on November 9, 2004, with complaints of back pain and anxiety. [Tr. 493]. Dr. Eastridge observed lumbar tenderness and limited back flexion, further noting that plaintiff "barely can bear" weight on the left toes. [Tr. 494]. He recorded plaintiff's self-reports that Dr. Smith and rehabilitation specialist John Marshall "have told him that they have done all that they can do for him and that he has chronic pain that he is going have [sic] to learn to adapt to." [Tr. 493-94]. Although the record reflects only one other appointment since July 11, 2003, Dr. Eastridge concluded, "Mr. Counts is totally disabled from any sort of work at this point. . . . I agree with his perusing [sic] permanent disability." [Tr. 494].

On November 24, 2004, Dr. Eastridge wrote, "Mr. Counts is totally disabled from any type of work at this point. He has low back pain and has had back surgery has had [sic] injections in his back after that." [Tr. 491]. At medication management appointments over the next four months, Dr. Eastridge continued to observe lumbar tenderness and limited range of motion. [Tr. 486-89]. As he did with Dr. Smith, plaintiff reported "seven out of

---

[1](...continued)
302]. He had returned to full-time work by April 1, 2004, but on June 29, 2004 reported that he had "quit his job as he felt they [his family] were pressuring him to do more than the restrictions that he was placed on by Dr. Ken Smith." [Tr. 238, 297].

6

ten" pain. [Tr. 488].

Nonexamining physician George Bounds completed a Physical RFC Assessment on January 4, 2005. Dr. Bounds reached the same conclusions as Dr. Miller, except that Dr. Bounds would also limit the climbing of ladders to no more than an occasional basis. [Tr. 463-64].

Although the administrative record indicates that Dr. Eastridge had not seen plaintiff in almost four months, the physician wrote "to whom it may concern" on July 1, 2005,

> I am writing to confirm that I treat Mr. Counts for lumbago and sciatica following a motor vehicle accident in 2003. . . . He is no longer able to bend and lift as was required when he was working on cars. Furthermore, he can't sit at a computer more than thirty minutes or ride in a car very long because of worsening pain shooting down his leg.
>
> I feel that Mr. Counts is unable to do any form of work at this time and I do not see any improvement over the past year. . . .

[Tr. 485].

## B. Psychological

On January 26, 2005, Dr. Eastridge noted the "chief complaint" of "anxiety, mood swing, nervous, panic attacks." [Tr. 488]. As additional support for his July 1, 2005 "to whom it may concern" letter, Dr. Eastridge wrote, "I also treat him for anxiety and panic attacks related to his disability since [the] accident." [Tr. 485].[2] At a subsequent deposition, general practitioner Eastridge stated that anxiety and depression were two of the reasons that

---

[2] Dr. Eastridge provided prescriptions for antianxiety medications in January 2005. [Tr. 486].

7

he deemed plaintiff disabled. [Tr. 528].

Clinical psychologist Steven Lawhon performed a psychological evaluation in January 2005. Plaintiff reported being "depressed due to financial and health reasons." [Tr. 469]. Dr. Lawhon opined that plaintiff would be no more than mildly limited in concentration, persistence, and work adaptation. [Tr. 471]. Plaintiff appeared "mildly to moderately anxious and depressed." [Tr. 471]. There was "no evidence at this time to support a diagnosis of panic disorder. Both psychotherapy and medication [were] recommended." [Tr. 471].

## IV.

### *Vocational Evidence*

Dr. Norman Hankins ("Dr. Hankins" or "VE") testified as a vocational expert at the administrative hearing. The ALJ presented a hypothetical claimant of plaintiff's age, education, and work experience who would be capable of light work limited by "no jobs that required him to repetitively bend or stoop, he would need a job that would allow frequent postural changes. . . . would also need low stress type jobs." [Tr. 618].

Dr. Hankins testified that the hypothetical worker would be unable to perform plaintiff's past relevant work. [Tr. 618]. In the alternative, Dr. Hankins identified a significant number of jobs existing in the state and national economies that the hypothetical claimant could perform. [Tr. 618-19]. Conversely, if Dr. Eastridge's opinion were fully adopted, the VE testified that all employment would be precluded. [Tr. 620].

8

V.

*Applicable Legal Standards*

This court's review is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A).[3] Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

---

[3] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. 42 U.S.C. § 1382. "Disability," for SSI purposes, is defined the same as under § 423. 42 U.S.C. § 1382c(a)(3).

VI.

*Analysis*

As did the ALJ, the undersigned has reviewed the Commissioner's musculoskeletal impairment listings, particularly Listing 1.04. The court agrees that the objective record does not support a finding that plaintiff meets or equals that listing. As did the ALJ, the court has also reviewed the Commissioner's mental impairment listings, particularly Listings 12.04 and 12.06. The court agrees that plaintiff neither meets nor equals either of those listings. That conclusion is supported by the file of examining psychologist Lawhon, who is the only mental health professional to have submitted an assessment of plaintiff's abilities. The ALJ's step three conclusion - that plaintiff does not meet or equal a listed impairment - was therefore supported by substantial evidence.

At step four, the ALJ found plaintiff unable to return to his past relevant work. At step five, the ALJ relied upon the VE testimony cited above to conclude that plaintiff remains able to perform a significant number of existing jobs. The vocational hypothetical presented to the VE was the same as the ALJ's formal RFC finding

> that the claimant has the residual functional capacity to lift objects weighing up to 20 pounds, to sit for six out of an eight-hour day, with normal breaks and to stand and walk for five out of eight hours per day, with frequent postural changes. The claimant is precluded from repetitive bending and stooping and is limited to simple, low-level tasks.

[Tr. 19, 618]. Substantial evidence supports the RFC formulated by the ALJ.

The RFC is first based on the assessments of state agency physicians Miller and Bounds. The ALJ then added the limitations imposed by treating neurosurgeon Smith - postural changes and avoidance of excessive bending or stooping - and a restriction to simple, low-stress jobs to take into account plaintiff's emotional complaints.[4]

It is apparent from the administrative hearing transcript [Tr. 620] that plaintiff's primary objection is to the rejection of Dr. Eastridge's opinion. As discussed above, Dr. Eastridge opined that plaintiff is totally disabled by back pain, anxiety, and depression.

The ALJ adequately explained the rejection of the physical aspects of Dr. Eastridge's opinion in favor of the assessment of treating neurosurgeon Smith. [Tr. 21-22]. It was Dr. Smith who operated on plaintiff's back, whereas Dr. Eastridge served primarily in a medication management role. [Tr. 21]. *See* 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist."). The ALJ also noted the significant periods of time occasionally passing between plaintiff's visits to Dr. Eastridge. [Tr. 21-22]. Also, although Dr. Eastridge treated plaintiff more recently than did Dr. Smith, the ALJ correctly noted that Dr. Eastridge had observed no dramatic worsening in plaintiff's condition since the dates of Dr. Smith's vocational opinions. [Tr. 21, 541]. Lastly, to the extent that Dr. Eastridge termed plaintiff "totally disabled," determination of ultimate issues

---

[4] The court notes that, although Dr. Smith previously opined from August 23, 2003, through March 16, 2004, that plaintiff "cannot return to work at this time," that period falls short of the twelve-month statutory requirement for a finding of disability. *See* 42 U.S.C. § 423(d)(1)(A).

12

such as disability are reserved to the Commissioner, not the physician. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).

The ALJ was presented with the conflicting opinions of two treating physicians, each of whom had been presented with complaints of "seven out of ten" back pain. The substantial evidence standard of review grants ALJs a "zone of choice" within which they can evaluate conflicting evidence. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). The present ALJ evaluated the differing evidence and provided adequate reasoning for the adoption of Dr. Smith's opinion. The court finds it particularly noteworthy that plaintiff returned full-time to a past relevant job in 2004 but quit because the employer would not permit him to work within the parameters assigned by Dr. Smith. [Tr. 297].

As for family physician Eastridge's opinion that plaintiff is disabled by anxiety and depression, the ALJ instead credited the assessment (no more than "mild" limitations) of examining consultative psychologist Lawhon. [Tr. 21]. *See* 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist."). The Commissioner may reject the opinion of a treating physician if it is not supported by sufficient medical data and if the ALJ articulates a valid basis for doing so. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *Harris*, 756 F.2d at 435; 20 C.F.R. § 404.1527(d)(3).

In sum, the ALJ applied the correct legal standards and his factual findings were supported by substantial evidence. The Commissioner's final decision must therefore be affirmed. An order consistent with this opinion will be entered.

ENTER:

        s/ Leon Jordan
United States District Judge